# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Appeal of Donald J. Sesso   :
from the Decision dated   :
September 14, 2018 of the Lower   :
Gwynedd Township Zoning Hearing   :   No. 1006 C.D. 2021
Board   :   Submitted:  December 4, 2023
  :
Appeal of:  Total Custom Homes, Inc.   :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE ELLEN CEISLER, Judge


**OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**        **FILED:  January 23, 2024**


Total Custom Homes, Inc. (TCH) appeals from the Order of the Court of Common Pleas of Montgomery County (common pleas) that reversed the decision of the Lower Gwynedd Township Zoning Hearing Board (Board) granting TCH a dimensional variance from the lot width requirements of Section 1257.03(b) of the LOWER GWYNEDD TOWNSHIP, MONTGOMERY COUNTY, PA. ZONING ORDINANCE (2009) (Ordinance).[1]  The Board found that the variance sought was *de minimis* and that TCH satisfied its burden of proof for a dimensional variance under the Supreme Court's decision in *Hertzberg v. Zoning Hearing Board of Adjustment of the City of Pittsburgh*, 721 A.2d 43 (Pa. 1998), including that it would suffer unnecessary hardship if the variance was denied.  In a supplemental decision, the Board held that

---

[1] The full Ordinance is found at pages 123a-401a of the Reproduced Record.  Section 1257.03(b), found at page 160a, addresses lots in the A Residential District and provides: "Minimum lot width.  A lot width of not less than 200 feet at the building line shall be provided for every dwelling or other building."  ORDINANCE § 1257.03(b).

TCH's variance application was not, as Donald J. Sesso (Objector) asserted, barred by res judicata because a past Board decision denied a variance from the lot width requirements but did so applying the pre-*Hertzberg* standard. In reversing, common pleas held the Board erred in granting the dimensional variance because TCH failed to establish that it would suffer an unnecessary hardship even under the relaxed standards of *Hertzberg*, the variance requested was not *de minimis*, and its application was barred by res judicata. On appeal, TCH argues common pleas erred in reversing the Board's determinations. Upon review, we reverse common pleas' Order because we agree with the Board's determinations that TCH's application was not barred by res judicata and that TCH met its burden of proving an entitlement to relief under the *Hertzberg* standard for a dimensional variance.

## I.     BACKGROUND

### A. Facts

TCH is equitable owner of a lot of approximately 2.4 acres that is zoned A Residential, which is only 163.72 feet wide (Property). The Property is legally owned by Frank and Rita Dombrowski (Dombrowskis) and currently has an existing residential structure, which fronts School House Lane. The Property's width is too narrow to meet the requirements of a residential lot under subsequently enacted Section 1257.03(b) of the Ordinance, which requires a minimum lot width of 200 feet. However, because the Property's development occurred prior to the Ordinance, its insufficient width is a preexisting nonconformity. TCH has an agreement to purchase the Property and wants to subdivide the Property into two lots, thereby allowing it to construct a second single-family residence on the rear of the Property (Lot 2), which fronts Gypsy Hill Road. To accomplish this, TCH filed an application seeking a variance from Section 1257.03(b) (Application) with the Board.

2

A hearing was held on September 13, 2018, at which TCH submitted the Application with attachments and provided an offer of proof as to what its two witnesses would testify, and those witnesses affirmed that this would be their testimony. (Reproduced Record (R.R.) at 8a-18a, 40a, 49a, 71a.) Nathan Krawzyk, a licensed professional engineer, agreed that his testimony would be as follows. His office laid out the plans for the proposed subdivision of the Property and construction of a second residence on Lot 2, which would have front and rear yard setbacks of 75 feet and side yard setbacks of 50 feet, which would comply with the Ordinance's setback requirements, and would front Gypsy Hill Road. (*Id.* at 42a-43a.) TCH can do nothing to change the Property's width, making it impossible to comply with the Ordinance's lot width requirement. (*Id.* at 45a.) A curb cut on Gypsy Hill Road and water line exist for the rear of the Property. (*Id.* at 46a-47a.) The adjacent development, The Pines of Gwynedd Valley (The Pines), was developed around the Property, and Lot 2 was contemplated as a separate building lot at the time of development of The Pines, is similar in size to those around it, and is keeping in the character of the neighborhood. (*Id.* at 47a-48a.) TCH "has requested the minimum relief necessary to afford reasonable use of the [P]roperty," "[t]here are no other variances requested especially relative to setbacks," and "what [TCH is] proposing is not adverse to the public health, safety, and welfare." (*Id.* at 48a.)

Philip Barbe, a TCH employee with 40 years of experience in land development and home construction, agreed that he would testify as follows. (*Id.* at 67a.) TCH initially reached out to neighboring property owners to discuss the proposed subdivision and potential issues, which included storm water management. (*Id.* at 68a-69a.) The proposed development was designed to minimize the relief

3

TCH requested, including that the home will not encroach into the side yard setbacks required by the Ordinance. (*Id.* at 70a.) The envisioned home on Lot 2 is a 4-bedroom, 4,000-square-foot home, with a 3-car garage, and would be priced around $1 million. (*Id.*) Mr. Barbe agreed that TCH would accept conditions by the Board, including deed restrictions, and that the development would conform with the side yard setbacks. (*Id.* at 72a-73a.)

Objector, whose residence abuts one side of the rear of the Property, and Young Park, the owner of property abutting the other side (Neighbor), objected to the variance. (*Id.* at 88a, 99a.) Objector was sworn in and testified regarding his ownership of the neighboring property and a history of the development of the Property. (*Id.* at 88a-89a.) He inquired about the availability of a 1989 Board decision that denied the Dombrowskis' request for a dimensional variance from the same lot width requirement as TCH sought in order to build on the rear of the Property (1989 Decision). (*Id.* at 90a, 96a.) The Board's solicitor advised that the Board did not have that decision before it, could not seek it out, and could consider only the evidence presented at the hearing. (*Id.* at 95a-96a.) Objector indicated he had opposed that variance and opposed the current variance as well, as it would negatively impact the value of his property, his privacy, and his view. (*Id.* at 90a-91a, 93a-95a.) Neighbor also testified, agreeing with Objector's concerns, as well as with those related to storm water runoff. (*Id.* at 99a-100a.)

### B. *The Board's Decisions*

Based on the above, the Board unanimously voted at the hearing to grant the variance subject to conditions. (*Id.* at 106a-08a.) The next day, the Board sent TCH an email, advising TCH that it "was granted a variance from [Section] 1257.03(b)"

subject to the conditions:   1) that development and use of the []
[P]roperty be in substantial conformance with the testimony and
exhibits presented . . . during the course of the Hearing, including . . .
the site plan . . . attached hereto; 2) that a Deed Restriction in [a] form
satisfactory to the Township Solicitor be recorded against the []
[P]roperty, to the benefit of . . . Township, prohibiting construction of
any portion of the residence on Lot 2 of the Plan any closer than 50 feet
from the side property lines of Lot 2; and 3) that a stormwater
management design for the [] [P]roperty be formulated and
implemented to the satisfaction of the Township Engineer.

This correspondence constitutes the written decision of the Board to
approve the un[]contested application, and no further findings,
conclusions, and/or reasons therefor will be issued.

(R.R. at 121a.)

Objector appealed, challenging the Board's failure to issue a written decision

with findings of fact and conclusions of law in accordance with Section 908(9) of

the Pennsylvania Municipalities Planning Code[2] (MPC), 53 P.S. § 10908(9), as well

as the Board's findings that TCH established an unnecessary hardship and did not

create its own hardship.  (Original Record (O.R.) Item 0000, at 3-5.)  Objector further

asserted the Board's 1989 Decision precluded the current Application and argued

the Board erred in failing to rule as much.  (*Id.* at 6-7.)

In its return of the record to common pleas, the Board included another written

decision, which included findings of fact and conclusions of law, explaining its

reasons for granting the Application.  Initially, the Board held that it "consider[ed]

the relief requested to be a *de minimis* variance from the lot width requirements,"

which could "be granted at the discretion of the Board even though an applicant may

have failed to meet one or more of the traditional criteria" for a variance.  (Board

Opinion (Op.) at 6.)  The Board was "mindful that the request is not a variance to

---

[2] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10908(9).

permit a second lot where the second lot is itself prohibited," but was a "request []
for a lot . . . which is . . . the exact valid non-conforming dimensional condition to
which the entire [] Property is already entitled." (*Id.*) According to the Board, the
Property's "valid non-conforming dimensional condition [] is in no way exacerbated
by drawing the new subdivision line and/or by the subdivision thereby created."
(*Id.*) The Board explained the variance was "rendered *de minimis* by the fact . . .
that it will, if granted, not thwart the purposes behind the lot width requirement" and
those purposes are advanced by granting the variance as it will result in lot shapes
more consistent with the area. (*Id.*) Finally, the Board observed the deviation was
only 18.1%, and it had ensured the purposes of the lot width requirements are
satisfied through its imposition of conditions.

> On the requirements of a dimensional variance at issue, the Board found:

> 10. The [] Property possesses the unique physical characteristic of being 104,892 square[ ]f[ee]t (2.4 acres) in net area[] significantly more than twice (262%) the 40,000 square-foot minimum lot area required in [the] A[]Residential District.

> 11. The [] Property possesses a unique physical characteristic in that the [e]xisting [h]ome, constructed prior to the currently applicable Ordinance regulations, is located at the far Northeast end of the [] Property, even closer to the ultimate right-of-way of School House Lane than would be permitted . . . [now].

> . . . .

> 13. The [] Property possesses the unique physical characteristic of narrowness, being 167.32 feet wide at all points, where the Ordinance requires a 200-foot minimum lot width.

> 14. The 167.32-foot lot width of the [] Property is a valid non-conforming dimensional condition, not created by [TCH].

6

15. The [] Property possesses [an] additional unique physical characteristic of being in excess of 3.9-times deeper than it is wide (640.68 feet deep by 163.72 feet wide).

16. The [] Property possesses at least one or more unique physical character[istics] in that, while <u>not</u> being on a corner lot, it nevertheless fronts two different public streets, both of which contain public water and sewer mains in areas within those respective roadways adjacent to the respective extremities of the [] Property.

. . . .

36. The grant of the lot width variance requested . . . will in no way alter the essential character of the neighborhood[.]

37. The grant of the lot width variance requested . . . will be in no way detrimental to the public health, safety, or welfare.

(Board's Findings of Fact (FOF) ¶¶ 10-11, 13-16, 36-37 (emphasis in original).) The Board also found that the plan attached to the Application reflected that the proposed home would be within all setback requirements for the A Residential District. (*Id.* ¶ 25.) Additionally, the Board indicated that "certain accommodations and improvements" were made "to enable [the] use of the rear of the [] Property (. . . Lot 2 . . . ) as a separate building lot for a new single-family dwelling," such as the 50-foot frontage, curb cut, and water line on Gypsy Hill Road. (*Id.* ¶ 28.) In its discussion, the Board set forth the requirements for obtaining a variance, as set forth in Section 910.2 of the MPC,[3] 53 P.S. § 10910.2. As to TCH's unnecessary hardship, the Board held that

> the [] Property possesses unique physical characteristics[] which result in an unnecessary hardship to the [] Property when forced to conform with the 200-foot lot width requirement, a hardship not shared in common with other properties in the area. Essentially, [TCH] is (and

---

[3] Section 910.2 was added by Section 89 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.

effectively has been) deprived reasonable use of approximately the one-half of that long, narrow, oversized parcel closest to Gypsy Hill Road. Further, [TCH] suffers the typical economic hardship of taxes, maintenance, insurance, and other expenses relating to owning a property more than double the size necessary to accommodate its current use, while strict enforcement of the lot width requirements forecloses any reasonable use of the rear-half of the 2.5-acre property.

. . . . Since the *Hertzberg* decision in 1998, it is no longer necessary for [an] applicant seeking a dimensional variance . . . to establish that the property cannot be used for any permitted purpose[s] and/or has virtually no value as zoned, in order to satisfy the "unnecessary hardship" requirement. Since . . . *Hertzberg* . . . multiple factors may now be considered in establishing hardship, including economic detriment to the applicant if the dimensional variance is denied.

. . . [T]he Board has applied the *Hertzberg* standard in arriving at its conclusion that [TCH] has satisfied its burden of establishing unnecessary hardship.

(Board Op. at 7-8.) The Board likewise held that TCH met the other requirements for a variance, including that the unnecessary hardship was not self-inflicted and the variance requested represented the minimum relief necessary to afford relief. (*Id.* at 8-9.)

Following various procedural motions not relevant to the disposition of this matter, briefing, and oral argument, common pleas remanded for the Board to consider Objector's res judicata arguments based on the 1989 Decision, which common pleas concluded had been properly raised at the hearing. (O.R. Item 66.) The 1989 Decision reflected that the Dombrowskis filed an application for a variance from the lot width requirement of Section 1257.03(b) in order to subdivide the Property into two lots. (R.R. at 468a-73a.) The 1989 Decision held the Dombrowskis failed to show that the Property could not be used for a permitted purpose, as it was so being used, that it could "be used for a permitted purpose only

8

by incurring additional expense," or that the Property had no value or distressed value due to the Ordinance's regulations. (*Id.* at 471a-72a.) The hardship the Board held in 1989, was "[Dombrowskis'] desire to subdivide the property and reap the financial benefit that would arise from the sale of the additional parcel." (*Id.* at 472a.) This hardship, the Board reasoned, "does not justify the grant of a variance from the provisions of the [] Ordinance," and "[t]he [P]roperty is currently being used in a reasonable manner consistent with the intentions of the municipality." (*Id.*) The Dombrowskis appealed the 1989 Decision, and common pleas upheld the Board's denial. (*Id.* at 474a.)

The Board issued a "Supplemental Decision and Order" (Supplemental Decision), which, after reviewing the 1989 Decision, rejected Objector's arguments that res judicata barred the current Application. Noting that res judicata is to be used sparingly in zoning cases, the Board reasoned that the change in law brought about by *Hertzberg*, before which an applicant for a dimensional variance had to prove that the property could not be put to any permitted use and was the standard that governed the 1989 Decision, resulted in "a cause of action for a dimensional variance on the [] Property" that was not available previously. (Supplemental Decision at 2-3.) The Board explained the identity of the causes of action is not identical because the facts needed to prove an entitlement to a dimensional variance changed between the 1989 Decision and the Application. (*Id.* at 3-4.)

*C. Common Pleas' Opinion*

Objector appealed again, challenging the Board's reasoning for granting TCH the dimensional variance set forth in the Board's various decisions as being legally erroneous and/or abuses of discretion. Without taking additional evidence, common pleas agreed with Objector, granted the appeal, and reversed the grant of the

9

dimensional variance. TCH filed a notice of appeal and, as directed, a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b), and common pleas issued a responsive opinion. Common pleas explained that TCH failed to establish unnecessary hardship in the absence of the variance because the Property could (and was) reasonably being used in conformance with the Ordinance and the inability to develop the Property as TCH desired, and the related inability to maximize the Property's profitability, were insufficient to constitute unnecessary hardship under precedent. (Common pleas' Op. at 6-8.) Common pleas further stated the Board abused its discretion in granting a *de minimis* variance where TCH presented no evidence to support that relief, including that the deviation was minor or that rigid compliance was not needed to protect public policy concerns, and where the deviation of 18.1% exceeds the thresholds in cases where such relief was denied. (*Id.* at 8-9.) Finally, common pleas disagreed with the Board's analysis as to the effect of *Hertzberg* on Objector's res judicata arguments, noting that while *Hertzberg* relaxed the requirements for obtaining a dimensional variance, it did not eliminate them, and the fact that a permitted use, the single-family residence, was and is located on the Property is a valid basis for denying a dimensional variance under both standards. (*Id.* at 14.)

## II.     DISCUSSION

Where common pleas "takes no additional evidence in a land use appeal, our scope of review is limited to determining whether the zoning hearing board committed an error of law or abused its discretion." *EDF Renewable Energy v. Foster Twp. Zoning Hearing Bd.*, 150 A.3d 538, 544 n.4 (Pa. Cmwlth. 2016). "A zoning hearing board abuses its discretion when its findings are not supported by

10

substantial evidence." *Id.* "Substantial evidence means relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* The zoning hearing board is the sole judge of witness credibility and evidentiary weight, and "[t]his Court may not substitute its interpretation of the evidence for that of the [zoning hearing board]." *Tidd v. Lower Saucon Twp. Zoning Hearing Bd.*, 118 A.3d 1, 13 (Pa. Cmwlth. 2015). Further, this Court must view the evidence presented in the light most favorable to the party that prevailed before the fact finder, including by giving that party the benefit of all reasonable inferences arising therefrom. *Id.* With these principles in mind, we address the parties' arguments, which we have rearranged.[4]

### A. *Res Judicata*

We begin with common pleas' conclusion that the Application was barred by res judicata, which TCH argues is erroneous as the Board properly held that the Application was not barred by res judicata due to the 1989 Decision because the causes of action differed between this matter and the prior variance request based on a change in the law pursuant to *Hertzberg*. Citing *Swift v. Radnor Township*, 983 A.2d 227, 232 (Pa. Cmwlth. 2009), for the definition of cause of action, TCH maintains to be the same cause of action, both matters require that the evidence necessary to prove the action be the same. (TCH's Brief (Br.) at 22.) After *Hertzberg*, TCH argues, dimensional variance applicants no longer had to present evidence that a property could not be used for any purpose in order to establish an unnecessary hardship. (*Id.* at 22-23.) Because the 1989 Decision was based on a

---

[4] The Township advised this Court of its non-participation in this matter by letter dated February 14, 2022. The Board is precluded from participating in this matter due to its failure to file a brief as directed by this Court by order dated July 12, 2022.

no-longer applicable evidentiary standard, TCH contends the Application was not barred by res judicata, a doctrine that should be used sparingly in zoning matters.

Objector acknowledges that res judicata should be used sparingly in zoning matters but argues it can be applied when the elements are met and there has been no substantial change in the conditions incident to the property since the prior determination, which is the case here. (Objector's Br. at 13-14 (citing *Namcorp, Inc. v. Zoning Hearing Bd. of Horsham Twp.*, 558 A.2d 898 (Pa. Cmwlth. 1989)).) Objector argues that *Hertzberg* does not, as the Board held, render this matter a different cause of action, because while *Hertzberg* changed the type of hardship that had to be proven to obtain a dimensional variance, an applicant for a dimensional variance must still meet the same criteria as before.

The doctrine of res judicata requires the agreement of four elements: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; [and] (4) identity of the quality in the persons for or against whom the claim is made." *City of Pittsburgh v. Zoning Bd. of Adjustment of City of Pittsburgh*, 559 A.2d 896, 901 (Pa. 1989). "However, the doctrine of res judicata is applied sparingly in zoning questions." *Id.* This is because of "the need for 'flexibility in zoning matters outweighs the risk of repetitive litigation.'" *Namcorp, Inc.*, 558 A.2d at 900 (quoting *Schubach v. Silver*, 336 A.2d 328, 333 (Pa. 1975)). A prior decision refusing to grant "a variance does not preclude a grant of a variance for the same land if there has been a subsequent substantial change in conditions incident to the land itself." *City of Pittsburgh*, 559 A.2d at 901.

In this matter, the Board held that res judicata is inapplicable because the causes of action in the 1989 Decision and the Application are not the same based on a change in the law, specifically *Hertzberg* and the change in the type of evidence

12

needed to prove an unnecessary hardship in dimensional variance cases. We agree. While "causes of action are identical when the subject matter and the ultimate issues are the same in both the old and new proceedings," the "[i]dentity of two causes of action may be determined by considering," among other things, "whether the **same evidence is necessary to prove each action**." *Swift*, 983 A.2d at 232 (emphasis added). As the Board explained in its Supplemental Decision,

> "[c]ause[ ]of[ ]action" is defined by Black's Law Dictionary as "the fact or facts which give a person a right to judicial relief[.]". . . [T]he facts necessary to establish entitlement to a dimensional variance in 1989 are substantively different, in ways relevant to the Application, from the facts necessary to establish entitlement to a dimensional variance in 2018. In 1989, the case contained facts . . . which eliminated any right to a dimensional variance. In 2018, the same facts would allow for a dimensional variance, precisely due to an intervening change in applicable law effectuated by *Hertzberg* in 1998. . . .
>
> At the very least, it is abundantly clear that the "cause of action" in 1989 is not identical to the "cause of action" in 2018 since [TCH] has been relieved in the intervening 30 years, by a change[ ]of[ ]law eliminating the very requirement which dictated denial of its 1989 Application.

(Supplemental Decision at 3-4 (emphasis in original).)

We agree with the Board's explanation, which is consistent with *Swift*'s reference to whether the same evidence is necessary to prove each action, 983 A.2d at 232. Although, as Objector notes, an applicant for a dimensional variance must prove unnecessary hardship under both the pre- and post-*Hertzberg* standards, the facts or "evidence [] necessary to prove each action," i.e., a dimensional variance, *Swift*, 983 A.2d at 232, are **not** the same after *Hertzberg*. Given the change in the law on what must be proven to obtain a dimensional variance brought about by *Hertzberg* and the longstanding principle that res judicata should be used sparingly

13

in zoning matters, we discern no error in the Board's determination that TCH was not barred from filing the Application.

### B. Unnecessary Hardship Under Hertzberg

TCH argues the Board properly granted it a dimensional variance because it met its burden of proof by establishing that it would suffer unnecessary hardship if the variance was denied. TCH asserts unnecessary hardship is not limited to economic hardships, but, as the Board properly held, is the result of numerous unique factors of the Property, including its narrowness, unusually large size, and frontage on two streets without being a corner lot. (TCH's Br. at 14, 17.) Even if economic hardship is required, TCH maintains it has been "deprived the reasonable use of roughly half of its long, narrow and large lot," "will suffer the economic detriment of having to pay for taxes, maintenance, insurance and other expenses associated with owning a lot more than double the size necessary to accommodate its current use," and "strict enforcement of the lot width requirements forecloses any reasonable use of the rear half of the 2.5 acre Property." (*Id.* at 16-17.) That a residence already exists on the Property does not preclude a finding of unnecessary hardship, TCH asserts, citing *Daley v. Zoning Hearing Board of Upper Moreland Township*, 770 A.2d 815 (Pa. Cmwlth. 2001).

Objector argues TCH failed to meet its burden of proving an entitlement to the dimensional variance because it did not prove that it would suffer unnecessary hardship where the Property is already being reasonably used as a single-family residence, a permitted use. According to Objector, TCH's inability to maximize the profitability or development potential of the Property does not constitute unnecessary hardship, even under the relaxed *Hertzberg* standard. (Objector's Br. at 19 (citing, e.g., *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d

14

488, 520 (Pa. Cmwlth. 2014)).)  Objector asserts TCH is asking for a new standard whereby a dimensional variance must be granted if a part of property is denied reasonable use, which the Court should reject because that standard is not consistent with the MPC, the Ordinance, or the courts' decisions in dimensional variance cases. Objector further argues that the "unusual physical characteristics" of the Property do not hinder the Property's continued use as one single-family residence and, therefore, do not establish the unnecessary hardship that warrants variance relief. Finally, Objector maintains TCH's reliance on *Daley* is misplaced because that case is readily distinguishable.

Section 910.2(a) of the MPC governs a zoning hearing board's authority to grant a variance and provides:

(a) The board shall hear requests for variances where it is alleged that the provisions of the zoning ordinance inflict unnecessary hardship upon the applicant.  The board may by rule prescribe the form of application and may require preliminary application to the zoning officer.  The board may grant a variance, provided that all of the following findings are made where relevant in a given case:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the appellant.

15

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

53 P.S. § 10910.2(a). Section 910.2(b) authorizes a zoning hearing board to impose reasonable conditions on a variance request it concludes are "necessary to implement the purposes of [the MPC] and the zoning ordinance." 53 P.S. § 10910.2(b).

In *Hertzberg*, the Pennsylvania Supreme Court held that, in certain circumstances, courts might employ a relaxed application of the variance factors when considering dimensional variances. The Supreme Court explained that "[w]hen seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations." 721 A.2d at 47. Accordingly, "the grant of a dimensional variance is of lesser moment than the grant of a use variance," and, therefore, "the quantum of proof required to establish unnecessary hardship is indeed lesser when a dimensional variance, as opposed to a use variance, is sought." *Id.* at 47-48. "[M]ultiple factors are to be taken into account in order to determine whether unnecessary hardship has been established," including "the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements[,] and the characteristics of the surrounding neighborhood." *Id.* at 48, 50. The Supreme Court's use of the word "including" reflects that the list of circumstances that would support a finding of

16

unnecessary hardship in dimensional variance cases provided in *Hertzberg* was not an exclusive one. We agree with TCH that the Board correctly held that TCH met its burden of proof for a variance under *Hertzberg*'s relaxed standards.

There are multiple factors that support the Board's determination that TCH will suffer unnecessary hardship based on the unique physical characteristics of the Property if the variance is denied. First, it is undisputed that the Property is **nonconforming** and, but for the Property's preexisting, nonconforming width, it could have been subdivided into two lots without the need for a variance. As the Board reasoned, nothing about granting the variance will create or enhance the preexisting nonconformity of the Property. "The [] Property exists at the width it is" and "it is not possible for [TCH], in escaping the hardship imposed by the Ordinance, to provide even one more inch of lot width than that which currently exists along the entire length of the [] Property." (Board Op. at 8.) In other words, there is no amount of money or effort that TCH can undertake to "bring the [Property] into strict compliance with the zoning requirements." *Hertzberg*, 721 A.2d at 50. Second, the Property has frontage on two streets, and the development in the area, The Pines, was designed around the proposed Lot 2 and provided a curb cut for a driveway and lateral water service line to Lot 2, reflecting that it would be a separate building lot for a new, single-family home. (FOF ¶ 28; Board Op. at 8-9.) Thus, not granting the variance would preclude TCH from developing the Property in accordance with "the characteristics of the surrounding neighborhood," *Hertzberg*, 721 A.2d at 50. Third, the Property is almost double the size needed to accommodate the permitted residential use in the A Residential District, but due to the preexisting nonconformity, it cannot be used in a manner otherwise consistent with the Ordinance's requirements. (Board Op. at 8.) All of these impose an

17

unnecessary hardship that is not shared with any other property or property owner in the area and preclude TCH from making reasonable use of the Property which, but for the preexisting nonconformity, could be developed as it was clearly intended to be.

In arguing that the Board erred in granting the dimensional variance under *Hertzberg*, Objector relies on, among other cases, *Dunn v. Middletown Township Zoning Hearing Board*, 143 A.3d 494, 500 (Pa. Cmwlth. 2014), and *Yeager v. Zoning Hearing Board of City of Allentown*, 779 A.2d 595 (Pa. Cmwlth. 2001), in which we held that where a property can be reasonably used without variances and the variances are sought only to enhance the profitability of a property, even the relaxed standards of *Hertzberg* are not met.  However, *Dunn* and *Yeager*, along with *Lawrenceville Stakeholders v. City of Pittsburgh Board of Adjustment*, 247 A.3d 465, 477 (Pa. Cmwlth. 2021), which was relied upon by common pleas to reverse, all involved **conforming** properties.  It was the property owners' desire to enhance the profitability of the properties that would result in the properties **becoming nonconforming** and the need for a variance.  But the matter presently before the Court is not the traditional situation where it is the property owner or developer that is **creating** the proposed nonconformity from which relief is sought via a dimensional variance.  TCH is not taking a conforming property and making it nonconforming in its desire to develop the Property.  Rather, the Property is **already** nonconforming, which makes the circumstances here distinguishable from the traditional scenario addressed by *Dunn*, *Lawrenceville Stakeholders*, and *Yeager*. Thus, we are not persuaded by these cases that the Board erred in finding that TCH met its burden of proof on its request for a traditional dimensional variance under these circumstances, particularly where the Board took steps to "implement the

18

purposes of [the MPC] and the zoning ordinance," through the imposition of conditions on that variance as authorized by Section 910.2(b) of the MPC. 53 P.S. § 10910.2(b).[5]

## III. CONCLUSION

For the foregoing reasons, the Board did not err or abuse its discretion in finding that res judicata did not bar TCH from filing the Application and that TCH met its burden of proving its entitlement to the requested dimensional variance under the *Hertzberg* standards. Accordingly, we reverse common pleas' Order.

          **RENÉE COHN JUBELIRER,** President Judge

---

[5] Because we conclude the Board did not err or abuse its discretion in granting TCH a traditional dimensional variance, we do not address TCH's argument that the Board properly granted it a *de minimis* variance.

19

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Donald J. Sesso : 
from the Decision dated :
September 14, 2018 of the Lower :
Gwynedd Township Zoning Hearing : No. 1006 C.D. 2021
Board :
 :
Appeal of: Total Custom Homes, Inc. :

# **O R D E R**

**NOW**, January 23, 2024, the Order of the Court of Common Pleas of Montgomery County, entered in the above-captioned matter, is hereby **REVERSED**.

_____
**RENÉE COHN JUBELIRER,** President Judge