EDF Renewable Energy,      :
              : No. 2601 C.D. 2015
            Appellant : Argued: September 13, 2016
              :
        v.          :
              :
Foster Township Zoning     :
Hearing Board and Foster   :
Township             :

EDF Renewable Energy     :
              : No. 2645 C.D. 2015
        v.          : Argued: September 13, 2016
              :
Foster Township Zoning     :
Hearing Board         :
              :
        v.          :
              :
Foster Township        :
              :
Appeal of: Foster Township   :
Zoning Hearing Board      :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION
BY JUDGE WOJCIK                        FILED: November 22, 2016


       EDF Renewable Energy (EDF) appeals from the November 18, 2015 order of the Court of Common Pleas of Luzerne County (trial court), which affirmed the decision of the Foster Township (Township) Zoning Hearing Board (ZHB) to deny EDF's application for a special exception to construct wind farms

in three different zoning districts in the Township. The ZHB cross-appeals and argues that the appeal should be quashed as premature. We affirm.

In July 2014, EDF applied for a permit to construct approximately 25 wind turbines, approximately 525' high, as well as roads, collection cables, and a substation on properties located in the Township's C-1 (Conservation), A-1 (Agricultural), and I-1 (General Industrial) zoning districts. The zoning officer denied the application because the proposed use was not a permitted use in the districts.[1]

Township Ordinance Section 255-36 states that whenever a use is neither specifically permitted nor denied in a district, the zoning hearing officer shall refer an application for such use to the ZHB to hear and decide as a special exception. Pursuant to that provision, EDF submitted an application for a special exception to the ZHB. R.R. at 21a. The application was accompanied by a letter, R.R. at 22a-23a, which briefly outlined the project, the parcels likely to be included for the project, and the proposed uses for each parcel, as well as a map, R.R. at 24a, which had circled areas indicating the approximate location of the wind turbines, and agreements with landowners, R.R. at 26a-41a.

Under Section 255-36 of the Ordinance, the ZHB may permit a proposed use

> only if it is determined to be similar to and compatible with permitted uses in the district and in no way is in conflict with the general purposes and intent of this chapter. The burden of proof shall be upon the applicant to demonstrate that the proposed use would meet the

---

[1] The transcript reflects that EDF had met with the township solicitor about an amendment to the Ordinance. Reproduced Record (R.R.) at 111a-14a. Ordinance Section 255.132 sets forth procedures and criteria for adoption of curative amendments but is not referenced in this appeal.

2

standards and criteria for a special exception as contained in [Ordinance Section] 255-142B of this chapter and would not be detrimental to the public health, safety and welfare and/or environmental features and characteristics of the site and/or surrounding areas.

R.R. at 483a. Section 255-51 of the Ordinance specifically authorizes the ZHB to approve or deny applications for uses permitted by special exception "pursuant to the standards and criteria set forth in §255-142B,[2] the respective zoning district in

---

[2] Section 255-142B states:

(1) The Board shall hear and decide requests for uses and/or development which are permitted as special exception uses. Special exception uses may be referred to the Planning Commission for its review, comments and recommendations prior to final action by the Board. The Board shall grant approval only upon determination that the proposed use and/or development conforms with all applicable standards and provisions within this chapter and the following express standards and criteria:

(a) The proposed use shall not jeopardize community development objectives as [set forth in] the Foster Township Comprehensive Plan, including any updates, revisions and/or amendments thereto.

(b) Public services and facilities such as streets . . . shall be adequate for the proposed use and/or development.

(c) Existing streets and proposed access to the site shall be adequate . . . for emergency vehicles.

(d) Existing streets and proposed access to the site shall be adequate to accommodate anticipated traffic volumes . . . .

(e) The proposed use shall be compatible with adjoining development and the character of the zoning district and neighborhood in which it is proposed to be located. The nature and intensity of the operation of the proposed use shall be considered regarding its compatibility or lack thereof.

**(Footnote continued on next page…)**

3

which the use is located, [and] all other applicable regulations of this chapter . . . ." R.R. at 503a.

Additionally, Ordinance Section 255-52 states that an applicant for a special exception must file a site plan:

> *A. Uses classified as a special exception shall file, in addition to a zoning permit, a site plan* at a scale of: (1) One inch equals 50 feet for uses/developments located upon properties in excess of two acres; or (2) One inch equals 20 feet for uses/developments located upon properties two acres or less.
>
> B. *Such plan shall provide all applicable information required for the Zoning Hearing Board to render a decision, including, but not limited to the following*:
>
> (1) The applicant shall submit a narrative outline that fully describes all proposed uses or development of the site, and all pertinent operational aspects, features, and/or

---

**(continued…)**

> (f) The proposed use shall not substantially impair the value of other property in the neighborhood where it is proposed to be located.
>
> (g) The proposed use and/or development shall not be more objectionable in its operations in terms of noise, fumes, odors, vibration, or lights than would be the operations of any permitted use in the subject zoning district.
>
> (h) The submission of any reports and/or studies, required by the Board, within the context of the definition "impact analysis," . . . .
>
> (i) The proposed use and/or development shall not be injurious to the public interest.

R.R. at 581a-82a.

4

activities related to the proposed uses or development of the site.

(2) The applicant shall provide upon the site plan the location and size of all buildings and structures, existing and proposed, including both principal and accessory buildings and structures.

(3) The applicant shall provide upon the site plan the location of all off-street parking areas and/or loading areas.

(4) The applicant shall provide upon the site plan the location of all open space areas, including buffer areas and fencing, if applicable.

(5) The applicant shall provide upon the site plan the means of traffic access to the site and internal traffic circulation within the site including the width and pavement of traffic lanes, and aisle widths.

(6) The applicant shall provide upon the site plan all streets, both public and private, within 200 feet of the site, including the right-of-way and cartway widths.

(7) The applicant shall provide upon the site plan the contours of the site for each five feet of change in elevation, based upon a field survey of the site, with the name of the person or firm who conducted the survey and the date of the survey when the proposed use includes new construction and/or grading of the site. If applicable, the applicant shall be required to submit a Soil Erosion and Sedimentation Plan for review and approval by the Luzerne County Conservation District.

(8) The applicant shall provide upon the site plan the location, nature and terms of any existing or proposed easements on the site and any easements both on-site and off-site which are used or intended to be used for access to the site, including the name and address of the owner or owners granting such easements.

(9) The applicant shall provide upon the site plan the location of all streams, ponds, watercourses, wetlands or any other bodies of water, including natural or man-made drainage swales, located on the site or within 200 feet of the site.

(10) The applicant shall provide upon the site plan the location of any residential structure within 200 feet of any property boundary line of the subject site, when the proposed use is nonresidential.

(11) The applicant shall supply upon the site plan the County Map, block and lot number of the subject parcel as contained in the records in the office of the Luzerne County Recorder of Deeds and a copy of the deed to the subject property.

(12) The applicant shall provide upon the site plan a location map at a scale of not greater than one inch equals 2,000 feet, indicating the relationship of the site to its geographic proximity within the Township.

(13) The applicant shall supply any other information required by the Foster Township Zoning Hearing Board for determining the conformance of the special exception use with the applicable regulations for that particular use.

R.R. at 503a-504a (emphasis added).

The ZHB held a hearing on EDF's application on September 24, 2014, which was continued to November 6, 2014, and concluded on December 3, 2014. EDF presented testimony and other evidence and provided a 36" x 24" copy of the map submitted with its application for reference.

Doug Copeland, EDF's regional development manager, testified that EDF had obtained several leases and had secured rights with other property owners. He stated that the noise generated by the proposed use would be only about 55 decibels, the equivalent of a running refrigerator, at the property line of

6

adjacent land. Copeland provided additional testimony about each of the three areas in which wind turbines would be situated.

As to the C-1 district, he stated that roads would be constructed using existing haul roads to minimize land clearing. He estimated that there would be 8 or 9 wind turbines in this area, with the closest turbine situated 1700 feet from the nearest home. Coleman explained that the final location of the wind turbines would be determined based upon soil conditions and added that trees would block the view from most homes. R.R. at 101a-40a.

Copeland testified that the area zoned A-1 was situated between 2 coal seams and said that there were no homes within a mile of that location. Coleman estimated that there would be 4 or 5 wind turbines on the A-1 site. He said that EDF would use existing roads in this area to the extent possible. R.R. at 147a-50a.

Copeland stated that the I-1 property was scrub land, a high point between two active mining operations, with mining on one side and a quarry to the north. He stated that EDF would build a new road, approximately 3 miles long and 15 feet wide, with a clearance of 50 feet. He estimated that EDF would construct 12 to 14 wind turbines at that location. R.R. at 154a-57a.

Copeland testified that a substation also would be located on the I-1 property, explaining that a substation acts like a breaker box. Coleman could not say how the wind turbines in each area would be connected to the substation. He testified that EDF's preference would be underground connections, but he noted that overhead connections would be simpler, and he stated that EDF was "in the process of figuring that out." R.R. at 158a-61a.

7

Copeland estimated that the wind turbines would be situated about 1000 feet apart, with each encompassing about 1 acre of land. R.R. at 307a, 373a. He added that the wind farm would have FAA-required lighting, which would have minimal or no impact on nearby residents. Copeland also testified regarding preliminary studies EDF conducted concerning sound and wildlife impact, noting that EDF signed an agreement for cooperation with the Pennsylvania Game Commission. Copeland emphasized the economic benefit the project would bring to the area, stating that it would likely generate half a million dollars in zoning permit fees alone. R.R. at 185a-86a.

Bob Hazenstab, EDF operations manager for Chestnut Flats Windfarm in Altoona, testified about the revenue generated by the Altoona project. He described noise studies conducted there, and he noted the absence of water runoff issues. Hazenstab also addressed potential safety concerns and explained that the wind turbines are designed to fall in half, not their full length of 525 feet. R.R. at 191a-208a.

Alan Rosen, a licensed real estate appraiser, testified that he is familiar with the area and that the wind farm would have no adverse effect on property values in the area. R.R. at 72a-99a.

Several residents testified in opposition to the proposal, including the president of the Greater Hazleton Area Astronomical Society, who complained that the wind turbines would block the night sky and would cause light pollution. R.R. at 310a-15a. The general manager of the nearby Beech Mountain Lakes development testified that the wind farm would have a detrimental impact on property values, up to 11% according to a British study. R.R. at 319a. Other

8

residents objected based on concerns of noise and the project's potential impact on wildlife.

During the course of the hearing, the ZHB referred the matter to the township planning commission, which held two hearings and twice recommended that the proposed use be denied as not similar to or compatible with permitted uses in the districts. On December 3, 2014, the ZHB voted to deny EDF's application, and the ZHB confirmed its oral decision in a January 2, 2015 letter to EDF, detailing its findings and conclusions. R.R. at 607a-12a.

In its written decision, the ZHB found that EDF wanted to construct approximately 25 wind turbines, each approximately 525-feet high, and would construct approximately 4 miles of roadways, utilizing approximately 2 miles of existing roads. The ZHB noted that EDF produced a generalized map of the entire area, including other municipalities, with ovals indicating the approximate location of the wind turbines. However, the ZHB observed that the map does not show the roadways or the location of the 25 wind turbines, proposed collection cables and substation.[3] (FF Nos. 10-13).

The ZHB also found that the matter was referred to the township's planning commission, which issued a written decision finding that the proposed use of wind turbines as part of a wind farm is not similar to or compatible with permitted uses in the district and does not fall within the Comprehensive Plan for Foster Township, and the ZHB stated that it adopted the planning commission's recommendation and decision. (FF Nos. 14-20).

---

[3] The ZHB erroneously stated that no leases were entered into the record. FF No. 2. We conclude that this error is harmless.

The ZHB recognized that Ordinance Section 255-52 expressly requires an applicant for a special exception to submit a site plan, at a scale of 1 inch equals 50 feet for developments in excess of 2 acres, along with 13 specific requirements, such as the location and size of all proposed structures. (FF Nos. 21-29). The ZHB found that the scale of the map submitted by EDF is 1 inch equals 1.4 miles and that the map is devoid of essential information, including the number of wind turbines proposed for each of the three areas, the proposed location of the turbines at each site, and their proposed size and height. (FF No. 30). The ZHB determined that as a result of its non-compliance with Section 255-52, EDF did not supply the information necessary to demonstrate compliance with the standards and criteria set forth in Ordinance Section 255-142(B). (FF Nos. 31-32).

The ZHB further found that EDF failed to produce sufficient evidence to establish that the proposed use would not adversely affect the community or impact property values. (FF No. 39) Additionally, the ZHB found that EDF failed to meet its burden of production and burden of proof on the standards necessary for a special exception under Section 255-36, in that EDF did not demonstrate that the proposed use as a wind farm is similar to or compatible with permitted uses in the district and falls within the Comprehensive Plan for Foster Township, and EDF's documents did not provide the information required under Section 255-52 of the Ordinance. (FF Nos. 33-37).

The ZHB's written decision is dated January 2, 2015. R.R. at 629a-34a. On that same date, EDF filed a Notice of Land Use Appeal, stating that it was appealing the ZHB's December 3, 2014 decision. According to affidavits of counsel for the ZHB and the Township, the ZHB's written decision was not mailed until January 5, 2015. The ZHB filed a motion to quash EDF's appeal as

10

prematurely filed, which the trial court denied by order dated June 4, 2015. EDF filed a Supplemental Notice of Appeal on January 30, 2015.

The trial court denied EDF's appeal on the grounds that EDF failed to comply with the objective criteria of the Ordinance, i.e., Section 255-52 (site plan), and failed to carry its burden of persuasion to demonstrate that the proposed use of wind turbines was similar to or compatible with the comprehensive plan for the Township. EDF now appeals to this Court,[4] arguing that the ZHB capriciously disregarded evidence and thus erred in denying the special exception application. The ZHB cross-appeals, arguing that the trial court erred in failing to grant the ZHB's motion to quash EDF's appeal as premature.

We first address the ZHB's contention that EDF's appeal should be quashed as premature. Citing *Magyar v. Zoning Hearing Board of Lewis Township*, 885 A.2d 123, 128 (Pa. Cmwlth. 2005), *Snyder v. Zoning Hearing Board of Warminster Township*, 782 A.2d 1088, 1090 (Pa. Cmwlth. 2001), Sections 914.1(b), 1001-A, and 1002-A of the Municipalities Planning Code (MPC),[5] and Section 5572 of the Judicial Code, 42 Pa.C.S. §5572,[6] the ZHB

---

[4] When the trial court takes no additional evidence in a land use appeal, our scope of review is limited to determining whether the zoning hearing board committed an error of law or abused its discretion. *Slusser v. Black Creek Township Zoning Hearing Board*, 124 A.3d 771, 773 n.2 (Pa. Cmwlth. 2015). A zoning hearing board abuses its discretion when its findings are not supported by substantial evidence. *Id.* Substantial evidence means relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.*

[5] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §§10914.1(b), 11001-A, and 11002-A. Section 11001-A of the MPC states that "[t]he procedures set forth in this article shall constitute the exclusive mode for securing review of any decision rendered pursuant to Article IX or deemed to have been made under this act." Section 10914.1(b) of the MPC provides that "[a]ll appeals from determinations adverse to the landowners shall be filed by the landowner within 30 days after notice of the determination is issued." 53 P.S. §10914.1(b). Section 11002-A of the MPC states that appeals from land use **(Footnote continued on next page…)**

11

asserts that for purposes of appeal, the date of entry of the ZHB's order is the mail date. Noting that counsel for both the ZHB and the Township attested that the ZHB's written decision was not mailed until January 5, 2015, the ZHB argues that EDF's January 2, 2015 appeal, which references the ZHB's December 3, 2014 decision, was taken from the ZHB's oral decision and should be quashed as premature.

However, both *Magyar* and *Snyder* are distinguishable from the circumstances presented here. *Magyar* was a "procedurally unusual case," 885 A.2d at 124, involving an appeal from a deemed denial governed by Section 908(a) of the MPC, 53 P.S. §10908(a) (requiring public notice of a deemed denial to trigger the 30-day appeal period). In *Snyder*, the appeal was filed 15 days before the date of the zoning board's order, and this court pointedly noted "[a]dditionally, Appellants *never filed a subsequent appeal* within thirty days after the entry of the decision, as required by the MPC." 782 A.2d at 1090 (emphasis added).

EDF responds that the ZHB's decision is in fact dated January 2, 2015, and it expressly states that an appeal must be filed "*within thirty (30) days of the date of this letter*." R.R. 634a (emphasis added). EDF further notes that it reserved the right to supplement its January 2, 2015 Notice of Land Use Appeal because it had not received the ZHB's findings and conclusions.

---

**(continued…)**

decisions "shall be filed within 30 days after entry of the decision as provided in 42 Pa.C.S. §5572 (relating to time of entry of order). . . ."

[6] Section 5572 states that the date of service of an order of a government unit, "which shall be the date of mailing if service is by mail, shall be deemed to be the date of entry of the order for the purposes of this subchapter . . . ." 42 Pa.C.S. §5572.

Based on the date and language of the ZHB's decision, we conclude that the trial court did not err in denying the motion to quash the appeal as premature. While EDF's second filing is entitled "Supplemental Notice of Land Use Appeal," it was filed after January 5, 2015, and within the 30-day appeal period. Although the ZHB argues that a premature appeal cannot be "supplemented," we conclude that the second notice of appeal cured any jurisdictional defect. *Snyder*.

Turning to the merits, we note that a special exception in a zoning ordinance is not an exception to a zoning restriction, but rather, a use that is expressly permitted. *Broussard v. Zoning Board of Adjustment of Pittsburgh*, 831 A.2d 764, 769 (Pa. Cmwlth. 2003).

> An 'exception' in a zoning ordinance is one allowable where facts and conditions detailed in the ordinance, as those upon which an exception may be permitted, are found to exist. Thus, an exception has its origin in the zoning ordinance itself. It relates only to such situations as are expressly provided for and enunciated by the terms of the ordinance. *The rules that determine the grant or refusal of the exception are enumerated in the ordinance itself.* The function of the board when an application for an exception is made is to determine that such specific facts, circumstances and conditions exist which comply with the standards of the ordinance and merit the granting of the exception.

*Id.* (quotations and citations omitted) (emphasis in original).

EDF argues that it presented sufficient evidence, in its application and through witness testimony, to satisfy all applicable ordinance criteria for the grant of a special exception. More specifically, EDF contends that it presented expert testimony regarding many details of the proposal, including concerns raised by objectors. EDF asserts that its witnesses also addressed the most contentious

13

issues, which were the effect of the wind farm on neighboring property values and its compatibility with adjoining development and the character of the zoning districts. EDF emphasizes that it submitted a 36" x 24" map with its application and that the map was used by witnesses to identify specific locations and geographical issues. EDF maintains that its evidence was not rebutted, and, therefore, the ZHB abused its discretion in denying the requested special exception.

In response, the ZHB and Township argue that, as the applicant for a special exception, EDF had the burden of proving that the proposed use meets the objective standards set forth in the zoning ordinance. *Bray v. Zoning Board of Adjustment*, 410 A.2d 909, 910 (Pa. Cmwlth. 1980). The Township argues that EDF did not meet this burden because it did not file a detailed site plan, as required by Section 255-52 of the Ordinance, and failed to show that the proposed use is similar to and compatible with permitted uses in the district, as required by Ordinance Sections 255-36 and 255-142.

Our review of the record confirms the ZHB's conclusion that EDF did not satisfy the objective requirements of the Ordinance. In particular, EDF's failure to submit a site plan as required by Ordinance Section 255-52(B), (or request a waiver of that requirement, or an extension of time to do so), is sufficient grounds on its own to deny the special exception application.

Contrary to EDF's assertions, the evidence offered at the hearing did not provide all of the information required by Section 255-52(B). Indeed, Copeland testified that the number of wind turbines and the precise location of the turbines and other details could not be determined until the soil was tested. Copeland could not say whether the wind turbines' connection to the substation

14

would be underground or above ground.  He stated that EDF would use existing roads "to the extent possible."  While EDF referred to a map during the hearing, neither the map nor the testimony of EDF's witnesses satisfies the Ordinance's requirement for a site plan that reflects the location of all structures, existing and proposed; all open space areas; means of traffic access and all streets; contours of the site for each five feet of change of elevation; and the location of any residential structure within 200 feet of any property boundary line of the subject site.

EDF argues that the zoning officer's assurance to the ZHB that EDF's application was completed properly, R.R. at 52a, and his submission of the application to the ZHB is evidence that the application complied with the Ordinance.[7]  However, EDF does not elaborate or provide any authority for this assertion, and a party's failure to include analysis and relevant authority hampers the court's ability to conduct meaningful appellate review.  *Korunsky v. Housing Code Board of Appeals*, 660 A.2d 180, 183-84 (Pa. Cmwlth. 1995); s*ee also* 2 G. Ronald Darlington et al., Pennsylvania Appellate Practice, §2119.4 (2015-2016).  Nevertheless, we observe that the Ordinance confers authority on the ZHB, not the zoning officer, to hear and decide requests for special exceptions.  *See* Ordinance Section 255-51 ("The authority for approving or denying applications for uses permitted by special exception shall be vested in the Zoning Hearing Board").  Further, we note that the statement on which EDF relies was made during the

---

[7] In relevant part, Section 255-142 A of the Ordinance states that an application for a special exception use shall not be submitted to or considered by the Zoning Hearing Board until the applicant submits an application for a zoning permit to the zoning officer and a site plan in accordance with §255-52 of this chapter.  The zoning officer "shall initially review the site plan to determine its compliance with §255-52 of this chapter."  R.R. at 581(a).

hearing, and EDF does not assert that it detrimentally relied on the zoning officer's acceptance of the application.

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

EDF Renewable Energy,        :
        : No. 2601 C.D. 2015
        Appellant   :
        :
        v.        :
        :
Foster Township Zoning        :
Hearing Board and Foster        :
Township        :


EDF Renewable Energy        :
        : No. 2645 C.D. 2015
        v.        :
        :
Foster Township Zoning        :
Hearing Board        :
        :
        v.        :
        :
Foster Township        :
        :
Appeal of: Foster Township        :
Zoning Hearing Board        :

O R D E R


        AND NOW, this 22nd day of November, 2016, the order of the Court of Common Pleas of Luzerne County, dated November 18, 2015, is affirmed.


_____
MICHAEL H. WOJCIK, Judge