IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Michael Kelly, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 452 C.D. 2024 |
| | : | Argued: February 4, 2026 |
| Haverford Township Zoning | : | |
| Hearing Board and Union United | : | |
| Methodist Church | : | |

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT                    FILED:  April 30, 2026

Michael Kelly (Objector) appeals an order of the Court of Common Pleas of Delaware County (trial court) that denied his land use appeal of a variance granted by the Haverford Township Zoning Hearing Board (Zoning Board) to allow Union United Methodist Church (Landowner) to install amber colored light-emitting diode (LED) lights in its church sign in place of the white lights required by the Zoning Ordinance of Haverford Township.[1]  The trial court held that Objector's appeal was untimely filed but, alternatively, that the variance was properly granted. On appeal, Objector contends that because his appeal was filed before the Zoning Board issued its final written decision, it was timely.  On the merits, Objector contends that the Zoning Board erred in treating Landowner's application as a dimensional variance as opposed to a use variance.  Landowner responds that the trial court correctly affirmed the Zoning Board but, in any case, it has a vested right to its replacement sign with amber lights because it was installed only after it

---

[1] ZONING ORDINANCE OF THE TOWNSHIP OF HAVERFORD, DELAWARE COUNTY, PENNSYLVANIA (Zoning Ordinance), Ordinance No. 1580, *as amended* (1974).

received a permit and after the deadline for a land use appeal had run. For the following reasons, we affirm the trial court's holding on the merits of the Zoning Board's decision.

## Background

Landowner is a church located on Brookline Boulevard in Haverford Township, Delaware County. The church is located in the Township's Institutional (INS) Zoning District, where signs are permitted as of right. *See* ZONING ORDINANCE §182-701.C(1). In December of 2019, Landowner applied for a permit to replace its existing lighted sign with a LED message board. The Township's Zoning Officer, Kelly Kirk, denied the permit, for two reasons:

> Pursuant to the General Laws of the Township of Haverford, §182-701[.]B(7)[,[2] n]o projecting signs, roof signs[,] vehicle signs, animated signs other than time and temperature signs that emit smoke, vapor or noise shall be permitted.

> Additionally, §182-701[.]C(3)(b)[2] permits signs for churches in the INS Institutional Zoning District to be illuminated by direct or indirect white light only between the hours of dusk and 12:00 midnight prevailing time.

---

[2] In all zoning districts:

> B. General regulations. The following regulations shall be observed in all districts:

> . . . .

>> 7. *No* projecting signs, roof signs, vehicle signs, *animated signs* other than time and temperature signs or signs that emit smoke, vapor or noise *shall be permitted*.

ZONING ORDINANCE §182-701.B(7) (emphasis added). In the INS district, signs are permitted under the following conditions:

> (b) The following types of identification signs may be illuminated by direct or indirect *white light only* between the hours of dusk and 12 midnight prevailing time:

> . . . .

>> [2] Church.

ZONING ORDINANCE §182-701.C(3)(b)[2] (emphasis added).

Reproduced Record at 7 (R.R. ___).[3] Landowner then requested a variance to allow illumination of its sign with amber lights, and on February 20, 2020, the Zoning Board conducted a hearing on Landowner's application.

At the hearing, Greg Feld, Landowner's contractor, testified. He explained that the church's proposed sign will replicate the dimensions of the existing lighted sign. The new sign will have the name of the church on top and a changeable message board below with church service times and events. The message board will not change more than once a day and will use amber-colored LED lights. Because the sign will not use graphics, it will not be an "animated" sign that is prohibited by Section 182-701.B(7) of the Zoning Ordinance. However, because the Zoning Ordinance limits sign illumination to "white light," the amber-colored lighting required a variance from Section 182.701.C(3)(b)[2] of the Zoning Ordinance. Notes of Testimony, 2/20/2020, at 12 (N.T. ___); R.R. 36. Feld explained that an LED sign "capable of single messages without graphics" is available only in two colors: amber or red. N.T. 14-15; R.R. 38-39. Lettering in white can be done only with graphics. Feld testified that white LED boards generate more glare than amber LED boards.

Pastor Mary Jane Kirby testified that the sign will display the church's service times and upcoming church events. The existing lighted sign displays only service times. She stated that the church was willing to limit sign changes to once a day; to turn off the sign lights before midnight; and to reduce the sign's brightness in the evening.

---

[3] Pennsylvania Rule of Appellate Procedure 2173 requires that the reproduced record be numbered in Arabic figures followed by a small "a." Pa.R.A.P. 2173. The reproduced record does not comply with Rule 2173 because it only utilizes Arabic figures. For convenience, we cite to each page as paginated by Objector.

The Zoning Board also heard from residents to whom it had given written notice of the hearing on Landowner's variance application.

Objector, who lives across the street from the church, introduced two exhibits that were admitted. The first was a written narrative that objected to the sign in the assumption that the new sign "was going to be an advertising sign" for Knowledge Points Learning Academy, a before and after school program that operates at the church. N.T. 29; R.R. 53. At the hearing, Objector stated that he was pleased to learn his assumption was erroneous and "happy" that the sign would be used only for church purposes. N.T. 28; R.R. 52. His second exhibit consisted of photographs of Landowner's existing sign taken from Objector's property. Stating that Landowner's existing sign is "very, very bright" and "on until midnight," Objector urged the Zoning Board to condition any variance on "significantly lower" lumens. N.T. 31; R.R. 55. When Objector complained about church parking, traffic, and the use of the church as a nursery school, the Zoning Board informed him that these matters were not the subject of the hearing and should be directed to the Township's Code Enforcement Officer.

Edward Brady, another neighbor, expressed concern that the proposed sign would be animated, and he did not "want to see some dancing thing going on across the street." N.T. 46-47; R.R. 70-71. Brady also noted that the church seems to function more as a childcare facility than as a church, noting that there is less traffic on Sundays than during the week.

Lynn Elliott, another neighbor, stated that she was "relieved to hear that there is no animation and no graphics to be put on this sign." N.T. 52; R.R. 76. She remained "leery of the precedent this sets to have one of these changeable signs in a residential neighborhood[.]" *Id.* She acknowledged that the church was located in

4

the INS District, which permits lighted signs, but noted that the church is surrounded by residential properties.

At its meeting on March 5, 2020, the Zoning Board explained that it had received information from Landowner comparing the brightness between the existing sign and the proposed LED sign. The Zoning Board then voted unanimously to approve Landowner's application, subject to the following conditions:

a. The overall size of the sign and pedestal will not exceed the height, width, and depth of the current sign.

b. There will be no animation or graphics, only static messages will be displayed.

c. Static messages can be changed no more than once per day.

d. There shall be no advertising for any purpose on behalf of any entity, including third parties and other users of the Property except for [Landowner's] operations and activities.

e. The sign is to be a single color, amber. The existing light is to be a maximum of 6,000 units or 557.4 foot candles during the daytime and a maximum of 4,000 units or 371.6 foot candles in the evening.

f. The [h]ours of operation for the sign to be 7:00 A.M. to 11 P.M.

g. The work to be completed within one (1) year.

Trial Court Op., 3/20/2024, at 5, ¶8; R.R. 262 (quoting Original Record, Transcription, 3/5/2020, at 6-7). On March 6, 2020, the Township Zoning Officer notified Landowner in writing that its requested variance had been granted with the above-listed conditions.

On April 1, 2020, Objector emailed the Zoning Officer about the Zoning Board's decision, requesting a copy of the order and information about an

appeal. The Zoning Officer responded that Objector had to appeal the order of the Zoning Board within 30 days of its issuance on March 5, 2020. However, she did not send Objector a copy of the Zoning Board's order. Objector again reached out to the Zoning Officer on April 9, 2020, and May 13, 2020.

On June 30, 2020, Objector appealed the Zoning Board's decision of March 5, 2020. On July 26, 2023, the trial court directed the Zoning Board to "issue and file its Findings of Fact, Decision and Conclusions of Law[.]" Trial Court Order, 7/26/2023, at 1; R.R. 190.[4] Thereafter, on October 24, 2023, the Zoning Board issued and filed its written decision, which stated, in relevant part, as follows:

> 6.  [Landowner] proposes replacing the outdated existing sign with a new more modern LED sign, which includes an upper backlit portion housing the name of the Church and a lower amber colored LED changeable sign replacing the existing sign's backlit track message board. []
>
> 7.  The proposed sign is designed to mirror the size of the existing sign, in that, the existing sign measures approximately 25 square feet and is about five and a half feet tall. []
>
> 8.  [Landowner's] proposed use of the changeable amber colored LED portion of the proposed sign is to have single static messages (displayed one at a time and changing once a day), which will only reference events and information directly related to Church activities consistent with its mission. No third-party advertising or information will be displayed and no animation or graphics. []
>
> 9.  The reason for [Landowner's] requested variances is due to the amber colored LED changeable portion of the proposed

---

[4] No activity occurred on the case for over two years. Then, on December 9, 2022, the Office of Judicial Support for Delaware County filed a notice of proposed termination of the case. On January 5, 2023, Objector filed a timely statement of intention to proceed and a certificate of readiness. Thereafter, on May 2, 2023, the Township filed a certification of the record. A status hearing was conducted on July 17, 2023. Thereafter, the trial court directed the Zoning Board to issue a decision with findings of fact and conclusions of law.

6

sign because the Township Zoning [C]ode permits only indirect or backlit white colored LED signs.  []

10.    [Landowner's] choice of color is limited because the available signs which provided for single changeable messages without graphics only come in two colors, red or amber.  []

11.    Signs manufactured with white lights are typically more animated and provide additional colors.  []

12.    Given the manufacturing limitations, [Landowner] cannot procure a non-graphic, non-animated sign with white LEDs so as to permit the proposed sign to be permitted by right.  []

13.    Signs with white lights also tend to be brighter and emit more glare than amber colored lights.  []

14.    The proposed sign's lights are adjustable and can be programmed to dim automatically.  []

15.    [Landowner] proposes that the sign will be at 80 to 90 percent brightness during the day and when it gets darker, at night, the brightness will be turned down to 40 or 50 percent brightness, with the entire sign being turned off by no later than midnight.  []

16.    The proposed sign with its LEDs will emit less glare and light than the existing fluorescent bulb sign, especially in the case of the changeable message portion as only the LED letters will be lit, whereas, in the current sign, the entire message board is backlit.  []

17.    The proposed sign and messaging will not be a distraction to passing motorists, and the proposed sign's light emission and programmable brightness will be an improvement over the current sign.  []

. . . .

23.    [Objector's] written, and verbal statements concentrate on concerns and objections to (1) a large, animated sign which advertises third-party activities; (2) sufficient off-street parking to accommodate the Church uses; (3) traffic concerns; (4) a claimed new use of the Property in a way of the nursery school/child after-care facility and [(5)] the brightness of the

7

sign, especially at night, and the light emanating from it projecting directly into [Objector's] living room window.  []

. . . .

25.    These concerns were addressed and resolved during the course of the hearing so as to make them moot or otherwise not appropriate issues before the [Zoning Board].  []

26.    Specifically, the proposed sign will be approximately the same dimensions as the existing sign, will emit less light and can be programmed to automatically dim at night, will not advertise third-party activities, and will not be animated or graphic.  []

27.    Additionally, off-street parking, traffic patterns, the nursery school/child after-care facility use and the associated real estate tax implications, are not issues before the [Zoning Board] in connection with this matter, thus they are not required to, nor will they, be addressed herein[].

Zoning Board Decision, Findings of Facts Nos. 6-17, 23, 25-27; R.R. 198-201 (citations and footnote omitted).

The Zoning Board concluded that Landowner sustained its burden and granted its application for a variance.  In so holding, the Zoning Board explained that a request for relief from the lighting requirement constituted a request for a dimensional variance, subject to the less stringent standard of review.  Because white LED lighting is not available without graphics, Landowner established an unnecessary hardship.  Further, the proposed sign will not affect the neighborhood because the new sign will be in the same location as the current sign; have the same dimensions; but will reduce the sign's brightness and hours of operation.

Thereafter, on March 20, 2024, the trial court denied Objector's land use appeal as untimely.[5]  It explained that the Zoning Ordinance specifies that "no person shall be allowed to file any appeal of the [Zoning Board] later than thirty (30)

_____

[5] The trial court permitted Objector to supplement his notice of appeal, which he did on November 13, 2023.  R.R. 190, 204-07.

8

days after the Board renders an [sic] determination, unless that person can prove they had no notice knowledge [sic] of the determination or reason to believe that [] such approval had been given." Trial Court Op., 3/20/2024, at 6, ¶18; R.R. 263. The Zoning Board granted the variance on March 5, 2020, and the next day the Zoning Officer mailed Landowner a copy of the Zoning Board's order granting the variance. On April 1, 2020, the Zoning Officer notified Objector by email that there was a 30-day deadline to file an appeal of the variance. However, Objector filed his appeal on June 30, 2020, which was well after the 30-day deadline. The trial court rejected Objector's contention that as a "party" to the Zoning Board proceeding, he was entitled to a separate written notice of the Zoning Board's decision. The trial court explained that Objector did not intervene and was not granted party status; he merely provided comments. The trial court also denied Objector's appeal on its merits, adopting the Zoning Board's findings of fact, discussion, and conclusions of law on the grant of the variance.

In its Pa.R.A.P. 1925(a) opinion, the trial court addressed Objector's contention that Landowner did not meet the requirements for a variance. It explained that Landowner demonstrated unnecessary hardship because the white lights required by the Zoning Ordinance cannot be obtained. A message board without animation or graphics requires amber or red LED lights. Further, the conditions imposed by the Zoning Board addressed all the concerns Objector raised at the hearing.

9

## Appeal

On appeal,[6] Objector raises five issues:[7]

[1.] Where an objecting neighbor was not served with either a copy of the zoning board's decision or a notice of the decision and a statement of the place where the neighbor could review the decision, is the neighbor justified in filing an appeal of the decision beyond 30 days after the decision was made?

[2.] Where an applicant for a variance fails to introduce evidence of: any unique features of the subject property; that the variance is required to enable reasonable use of the subject property; and that the requested variance is the minimum required, is the grant of a variance proper?

[3.] Where a zoning ordinance limits illumination of signs to direct or indirect white light without animation, is it a legal hardship pertaining to the property that the sign industry usually makes non-animated signs with amber or red lighting?

[4.] Where no evidence was introduced before a zoning board as to the legal nonconformity of an existing sign on the subject property, is the zoning board justified in relying on nonconformity as a justification for a variance?

[5.] Where an applicant is granted a variance to erect a sign and completes construction of the sign during the pendency of an appeal of the variance, does the applicant have a "vested right" to maintain the sign regardless of the outcome of the appeal?

Objector Brief at 10-11.

---

[6] Where, as here, the trial court does not take any additional evidence, our review of a zoning board's decision determines whether the zoning board abused its discretion or committed an error of law. *H.E. Rohrer, Inc. v. Zoning Hearing Board of Jackson Township*, 808 A.2d 1014, 1016 n.1 (Pa. Cmwlth. 2002). A zoning board abuses its discretion when its findings of fact are not supported by substantial evidence. *Rickert v. Latimore Township*, 960 A.2d 912, 918 n.9 (Pa. Cmwlth. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 640 (Pa. 1983).

[7] For purposes of this opinion, we have reordered Objector's issues on appeal.

10

Landowner disputes each of Objector's assignments of error. In addition, it contends that Objector's appeal should be denied because it has a vested right to keep its new sign, which it installed at a cost of over $19,000, and only after it received a permit and after the period for a land use appeal had run.[8]

**Analysis**

**I. Timeliness of Objector's Appeal to the Trial Court**

In his first issue, Objector argues that the trial court erred in holding that his appeal of the Zoning Board's decision was untimely. The Pennsylvania Municipalities Planning Code (MPC)[9] requires land use appeals to be filed 30 days after entry of the Zoning Board's decision, Section 1002-A(a) of the MPC, 53 P.S. §11002-A(a),[10] which is "the date of mailing if service is by mail[.]" 42 Pa. C.S. §5572. Objector contends that because the Zoning Board did not mail him a copy of the decision, it was not "entered." Accordingly, the appeal period had not yet begun to run when he filed his land use appeal on June 30, 2020.

Landowner responds that Objector had actual notice of the Zoning Board's decision and of the April 6, 2020, deadline for filing an appeal, by reason of the Zoning Officer's email to him on April 1, 2020. Both the MPC and the Zoning Ordinance allow for notice by "mail or otherwise." Section 908(10) of the MPC, 53 P.S. §10908(10); ZONING ORDINANCE §182-1003.B(2)(b). Landowner argues that the Zoning Officer's notice to Objector satisfied the "otherwise" notice. Further, Objector was not a party because he "never formally filed his objection" with the Board; he merely handed in prepared comments. Landowner Brief at 6. In any case,

---

[8] The Zoning Board did not file a brief. Accordingly, by order of July 17, 2025, this Court precluded the Zoning Board from filing a brief and participating in oral argument.

[9] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202.

[10] Added by the Act of December 21, 1988, P.L. 1329.

Objector is not aggrieved because he "testified he was happy with the Church's proposed sign." *Id*. Any concerns that he expressed at the hearing with the sign were addressed by the Zoning Board's conditions on the grant of the variance.

In the alternative, Landowner argues that Objector had constructive notice of the Zoning Board's decision on May 13, 2020, when Objector spoke with employees of the sign company who were working on the installation of the approved sign. This notice triggered a 30-day appeal period. However, Objector waited until June 30, 2020, to file an appeal.

The timeliness of land use appeals is governed by the MPC. Section 1002-A(a) states:

> All appeals from all land use decisions rendered pursuant to Article IX shall be taken to the court of common pleas of the judicial district wherein the land is located and *shall be filed within 30 days after entry of the decision as provided in 42 Pa. C.S. §5572 (relating to time of entry of order)*. . . . It is the express intent of the General Assembly that, *except in cases in which an unconstitutional deprivation of due process would result from its application, the 30-day limitation in this section should be applied in all appeals from decisions*.

53 P.S. §11002-A(a) (emphasis added).[11] In turn, Section 5572 of the Judicial Code explains the time of "entry" as follows:

---

[11] Section 182-1005.A of the Zoning Ordinance similarly provides:

> Appeals before Zoning Board and court. All appeals, applications or challenges which properly come before the Board in accordance with the requirements of the [MPC] and *all appeals to court shall be subject to the time limitations and requirements of this Article and any other applicable provision of said code*. The proceedings set forth in this Article shall constitute the exclusive mode for securing review of any ordinance, decision, determination or order of the Board of Township Commissioners, its agencies or officers adopted or issued pursuant to the [MPC]. Appeals to court shall be taken to the Court of Common Pleas of Delaware County.

ZONING ORDINANCE §182-1005.A (emphasis added).

*The date of service of an order of a government unit, which shall be the date of mailing if service is by mail*, shall be deemed to be the date of entry of the order for the purposes of this subchapter. The date of entry of an order of a court or magisterial district judge may be specified by general rules.

42 Pa. C.S. §5572 (emphasis added). It is the "mailing or other direct communication of the written decision," *Narberth Borough v. Lower Merion Township*, 915 A.2d 626, 636 (Pa. 2007), not the vote of a governing body, that constitutes "entry of the decision" and triggers the 30-day deadline for filing a land use appeal. Section 1002-A(a) of the MPC, 53 P.S. §11002-A(a).

However, that does not end the inquiry because persons other than the applicant are entitled to notice of a zoning board decision. Section 908(10) of the MPC states, in relevant part, as follows:

A copy of the final decision or, where no decision is called for, of the findings shall be delivered to the applicant personally or mailed to him not later than the day following its date. *To all other persons who have filed their name and address with the board not later than the last day of the hearing, the board shall provide by mail or otherwise, brief notice of the decision or findings and a statement of the place at which the full decision or findings may be examined.*

53 P.S. §10908(10) (emphasis added). Objector filed his name and address with the Zoning Board. N.T. 28; R.R. 52.

As to the requirements for a "final decision," the MPC states, in pertinent part, as follows:

The board or the hearing officer, as the case may be, shall render a written decision or, when no decision is called for, make written findings on the application within 45 days after the last hearing before the board or hearing officer. *Where the application is contested or denied, each decision shall be accompanied by findings of fact and conclusions based thereon together with the reasons therefor*. Conclusions based on any provisions of this

13

act or of any ordinance, rule or regulation shall contain a reference to the provision relied on and the reasons why the conclusion is deemed appropriate in the light of the facts found.

Section 908(9) of the MPC, 53 P.S. §10908(9) (emphasis added). Although close, Objector's participation in the Zoning Board hearing can be considered as contesting Landowner's variance application.

In *Mihal v. Zoning Board of City of Hazleton*, 545 A.2d 1002 (Pa. Cmwlth. 1988), this Court held that a zoning board erred as a matter of law because it did not provide a notice of its decision to the four protestors who had filed their names and addresses with the board before the last day of the hearing. We held that the appeal filed by the four protestors was timely, even though it was filed after the 30-day appeal period. *See also Clemens v. Zoning Hearing Board of Upper Gwynedd Township*, 281 A.2d 93 (Pa. Cmwlth. 1971) (*en banc*).

Here, Objector appeared at the hearing, provided his name and address on the record, was sworn in, testified, and submitted exhibits, on which his name and address were written.[12] As such, he was a party to the proceedings before the Zoning Board. *See* ZONING ORDINANCE §182-1003.A(4) ("The parties to the hearing shall be . . . any person affected by the application who has made a timely appearance

---

[12] Notably, the Zoning Board gave Objector notice of the hearing on Landowner's variance. The Zoning Ordinance states:

> In any case where the Zoning Hearing Board shall hold a public hearing, the Board shall, at the minimum, give notice of such hearing as follows, which notice shall state the time and the place of the hearing and the particular nature of the matter to be considered at the hearing:
>
> . . . .
>
> > (b)    By mailing or delivering due notice thereof to the applicant and other parties in interest, who shall be at least those persons whose properties adjoin the property in question.

ZONING ORDINANCE §182-1003.B(1)(b).

14

of record before the Board[.]"). Accordingly, Objector was entitled to a "brief notice of the decision" and where to find a copy of "the full decision" for his examination. Section 908(10) of the MPC, 53 P.S. §10908(10).

On April 1, 2020, the Zoning Officer notified Objector of the Zoning Board's decision to grant the variance with conditions and the appeal deadline. Objector responded with two requests for a copy of the Zoning Board's decision, with findings of fact and conclusions of law. Supplemental Appeal ¶¶10.c, 10.d; R.R. 206. Objector was not advised on where he could find the full decision. On October 24, 2023, in response to the trial court directive, the Zoning Board issued and filed its decision with findings of fact and conclusions of law. On November 13, 2023, Objector filed a supplemental appeal.[13]

In *Snyder v. Zoning Hearing Board of Warminster Township*, 782 A.2d 1088 (Pa. Cmwlth. 2001), an objector appealed within 30 days of the zoning hearing board's vote on a land use dispute. Thereafter, the zoning board issued its written decision with findings of fact and conclusions of law. This Court determined that because the objector's appeal was filed before the zoning board's written determination, it was premature and, thus, its appeal should have been quashed. We vacated the trial court's decision on the merits and remanded to the trial court to quash the appeal.

In *EDF Renewable Energy v. Foster Township Zoning Hearing Board*, 150 A.3d 538 (Pa. Cmwlth. 2016) (*EDF*), the zoning board announced its decision on December 3, 2014, and on January 2, 2015, the applicant appealed. On January

---

[13] In its March 20, 2024, opinion, the trial court stated that on November 13, 2023, it received a courtesy copy of Objector's supplemental appeal. The trial court also noted that the "Supplemental Appeal is reflected on the Office of Judicial Support Docket" as being filed on February 9, 2024; however, "there is no argument by the other parties that this Appeal was not properly and timely filed." Trial Court Op., 3/20/2024, at 3, ¶14 n.3; R.R. 259.

15

5, 2015, the zoning board mailed its written decision, to which the applicant responded with a supplemental appeal.  Before this Court, the zoning board argued that the applicant's appeal should have been quashed as premature because it was filed before the issuance of the written decision and, further, a notice of appeal cannot be supplemented.  This Court rejected that argument, concluding that the trial court did not err in deciding the merits of the land use appeal.  Even if the original land use appeal had been prematurely filed, the second appeal, which was filed within 30 days of the zoning board's written decision, "cured any jurisdictional defect."  *Id*. at 545.

Here, as in *EDF*, Objector prematurely filed a notice of appeal.  At the direction of the trial court, the Zoning Board issued its decision with findings of fact and conclusions of law on October 24, 2023.  The trial court gave Objector 20 days to file a supplemental appeal.  Trial Court Order, 7/26/2023, at 1; R.R. 190.[14]  Objector filed a supplemental appeal on November 13, 2023.

The Zoning Board publicly announced its decision on March 5, 2020, but "zoning decisions are not final until a written decision is issued[.]" *First Avenue Partners v. City of Pittsburgh Planning Commission*, 151 A.3d 715, 722 (Pa. Cmwlth. 2016).  A written decision must have findings of fact and conclusions of law where there is a contest.  Section 908(9) of the MPC, 53 P.S. §10908(9).  Objector's June 30, 2020, appeal was filed in advance of the Zoning Board's written decision and, thus, was premature.  However, any jurisdictional defect was cured by Objector's timely supplement to his appeal that was filed after the Zoning Board

---

[14] Notwithstanding the trial court's order, the MPC gave Objector 30 days from October 24, 2023, to appeal the Zoning Board's written decision.  *See EDF*, 150 A.3d at 545.  *See also Narberth Borough*, 915 A.2d at 636 (the MPC "creates a period of time during which *all* appeals must be filed and it specifies a triggering event, the mailing or other direct communication of the written decision, that begins the running of that time" (emphasis in original)).

issued its written decision. *EDF*, 150 A.3d at 545. Because Objector's appeal of the Zoning Board's decision was timely filed, we reverse the trial court's holding that Objector's appeal was untimely filed.

## II. Nature of Variance Request

On the merits of the variance, Objector argues that the Zoning Board erred in treating Landowner's application as a request for a dimensional variance. Objector explains that "[sign regulations] tend to be many-faceted and difficult to classify as 'use' regulations or as 'dimensional rules.'" Objector Brief at 25 (quoting ROBERT S. RYAN, *Pennsylvania Zoning Law and Practice* §6:3:1 (2021)). He contends that where a zoning ordinance prohibits a type of sign, such as a billboard, a use variance is required. Contending that the Zoning Ordinance prohibits lighted signs with colored bulbs, Objector argues that the Zoning Board should have treated Landowner's application as a request for a use variance.

Landowner responds that it sought an adjustment to the Zoning Ordinance regulation of the color of the lights to be installed on a lighted sign, which is a dimensional regulation. The color of the light bulbs has nothing to do with the ability of the church to install a lighted sign, which is a use permitted by right. We agree.

A revision to the color of the lights is a dimensional variance because it states a quantifiable requirement, such as the number of feet in a setback regulation. By contrast, a use variance permits a use that is wholly outside zoning regulations. *See Oxford Corporation v. Zoning Hearing Board of Borough of Oxford*, 34 A.3d 286, 295 n.10 (Pa. Cmwlth. 2011) ("When a landowner seeks a use variance, he is seeking to use the property in a manner that is totally outside the local zoning regulation."). A dimensional variance permits deviations from strict

quantifiable requirements, such as the color of a sign's lighting, where the use is permitted. *See Tri-County Landfill, Inc. v. Pine Township Zoning Hearing Board*, 83 A.3d 488, 520 (Pa. Cmwlth. 2014) (holding that a dimensional variance seeks relief from a dimensional regulation, such as height, so that the property can be used in accordance with the uses permitted by right). Here, the use permitted by right is a lighted sign that identifies the institution. Regulation of the lighting color for that permitted sign does not pertain to use.

In his argument that Landowner needed a use variance, Objector relies on *Lamar Advantage GP Company v. Zoning Hearing Board of Adjustment of City of Pittsburgh*, 997 A.2d 423 (Pa. Cmwlth. 2010) (*Lamar*). In that case, the applicant sought to erect a 1,098-square-foot billboard on a property where advertising signs were not permitted at all. Thus, a use variance was required. *Lamar* is inapposite because church identification signs are permitted by right in the Township's INS District.

Landowner's request to use amber lighting sought relief from a dimensional, not a use, regulation. Accordingly, the Zoning Board correctly treated Landowner's application as a dimensional variance request.

### III. Variance Requirements

Objector argues that Landowner did not prove all the elements for a variance, in particular, unnecessary hardship. In support, Objector directs this Court to *Society Created to Reduce Urban Blight v. Zoning Board of Adjustment of the City of Philadelphia*, 771 A.2d 874 (Pa. Cmwlth. 2001), where the applicant sought variances for its billboard near the Walt Whitman Bridge. The applicant argued it needed a sign in excess of the permitted dimensions so that the sign could be seen by vehicles crossing the bridge, which this Court concluded did not demonstrate an

18

unnecessary hardship. Objector also cites *Shultz v. Zoning Hearing Board of Mount Joy Township* (Pa. Cmwlth., No. 989 C.D. 2021, filed November 2, 2023) (*en banc*) (unreported),[15] noting that the applicant did not "demonstrate the requisite unnecessary hardship[,]" by showing, for example, that the soft soils within the township or some other physical characteristic of the property made it impossible to use the property for a permitted purpose. Objector Brief at 31 (quoting *Shultz*, slip op. at 15).[16] Objector further argues that Landowner did not show that the variance granted was the minimum relief necessary to afford relief.

Landowner responds that it met the requirements for a dimensional variance. The unnecessary hardship was occasioned by the fact that a sign with white lighting is not available for message-only signs using LED lights. Because the amber LED emits less glare than the white LED, it serves, not detracts from, the public welfare. Further, the sign can be adjusted so that it is dimmed in the evening and turned off before midnight. The Zoning Board's conclusion on unnecessary hardship is fully supported by the record.

The Zoning Ordinance sets forth the requirements for the grant of a variance:

---

[15] Parties may cite to unreported decisions of this Court issued after January 15, 2008, for persuasive value, but not as binding precedent. Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

[16] *Shultz* concerned a variance from the zoning ordinance's 50-foot height limitation to allow the landowner to construct a concrete batch plant with silos 85 feet high. The zoning board granted the variance, and the lower court reversed for the stated reason that the applicant's witness testified that "the dimensional variance is not based upon any unique physical circumstances or conditions peculiar to the property nor that the unnecessary hardship is due to such conditions from the property." *Shultz*, slip op. at 8 (quotation omitted). This Court affirmed. The variance application did not assert that the property could not be developed in any way without a variance, and the applicant's witness conceded that the requested variance did not have anything to do with the lot.

A.    In any instance where the Zoning Hearing Board is required to consider a special exception or variance in the Zoning Ordinance or Zoning Map in accordance with the provisions of this chapter, the Board shall, among other things, consider the following standards:

(1)    Variances.

(a)    That there are unique physical circumstances or conditions, including irregularity, narrowness or shallowness of lot size or shape or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of this chapter in the neighborhood or district in which the property is located.

(b)    That because of such physical circumstances or conditions there is no possibility that the property can be developed in strict conformity with the provisions of this chapter and that the authorization of a variance is therefor necessary to enable the reasonable use of the property.

(c)    That such unnecessary hardship has not been created by the appellant.

(d)    That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located nor substantially or permanently impair the appropriate use or development of adjacent property nor be detrimental to the public welfare.

(e)    That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

ZONING ORDINANCE §182-1004.A(1).[17]   The Zoning Board's decision addressed each factor and concluded that Landowner satisfied the factors for a lighting variance.

---

[17] These criteria mirror those in Section 910.2(a) of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10910.2(a).  Further, Section 910.2(b) authorizes a zoning board to

In *Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh*, 721 A.2d 43, 47 (Pa. 1998), the Pennsylvania Supreme Court explained that "[w]hen seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations." Accordingly, "the grant of a dimensional variance is of lesser moment than the grant of a use variance," and, therefore, "the quantum of proof required to establish unnecessary hardship is indeed lesser when a dimensional variance, as opposed to a use variance, is sought." *Id*. at 47-48. Factors to consider include "the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements[,] and the characteristics of the surrounding neighborhood." *In re Sesso*, 309 A.3d 226, 236 (Pa. Cmwlth. 2024) (quoting *Hertzberg*, 721 A.2d at 50). We have explained that the list of circumstances to support a finding of unnecessary hardship identified in *Hertzberg* is not an exclusive list. *Id*.

The Zoning Board found that the "proposed sign is designed to mirror the size of the existing sign," which is approximately five and one-half feet tall. Zoning Board Decision, Finding of Fact No. 7; R.R. 198. It also found that it is impossible to install a new sign with lettering in white LED lights unless it also has animation. A non-animated sign must use amber or red lights. In short, Landowner was found unable to "procure a non-graphic, non-animated sign with white LEDs so as to permit the proposed sign to be permitted by right." Zoning Board Decision, Finding of Fact No. 12; R.R. 198.

impose reasonable conditions on a variance request it concludes are "necessary to implement the purposes of [the MPC] and the zoning ordinance." 53 P.S. §10910.2(b).

Impossibility of compliance is a factor when determining whether there exists an unnecessary hardship for a dimensional variance. *Talkish v. Zoning Hearing Board of Harborcreek Township*, 738 A.2d 50 (Pa. Cmwlth. 1999), involved a community center building for which the zoning hearing board granted variances from the rear and side yard setback requirements. This Court affirmed the variances, explaining that impossibility was a "factor to consider" because there was no place on the premises where the structure could be built in accordance with the setback regulations. *Id*. at 52. Similarly, in *Riccio v. Newtown Township Zoning Hearing Board*, 308 A.3d 928, 942 (Pa. Cmwlth. 2024), this Court explained that "[a]n undersized lot constitutes the physical circumstances" that will justify a dimensional variance. Unavailability of white LED is a "physical circumstance."

In addition, *Hertzberg* "includes and contemplates consideration of multiple factors and circumstances, not only topography or other physical characteristics of the property itself, in determining whether a hardship exists for purposes of a dimensional variance." *Shultz*, slip op. at 3 (Fizzano Cannon, J., concurring). In other words, hardship "does not always have to relate to the physical features or characteristics of the land (*i.e.*, topography, lot size, etc.)." *Id.*, slip op. at 6. Unnecessary hardship can relate to the building itself. *Hertzberg*, 721 A.2d at 49.

Here, the impossibility of installing white LED bulbs constitutes an unnecessary hardship. Further, the dimensions of the church sign have not changed. Ironically, the variance to allow amber lights renders the Church sign less impactful than the permitted white LED lights. We conclude that the Zoning Board did not err in holding that Landowner met its burden of proof for the grant of a variance under

22

each of the requirements in the Zoning Ordinance. ZONING ORDINANCE §182-1004.A(1).

## IV. Non-conforming Use

In his final issue, Objector argues that Landowner did not prove that its prior sign was a lawful non-conforming sign, which exceeds the current size limitations in the Zoning Ordinance. Objector believes that "at some point" the original sign became unlawful. Objector Brief at 39. He also claims that the church does not meet the Zoning Ordinance's parking requirements. Neither issue pertains to the Zoning Board's grant of relief from the white lighting mandate for institutional signs. Accordingly, the Zoning Board properly refused to address any of those issues.[18]

## Conclusion

Objector's June 30, 2020, appeal of the Zoning Board's decision was filed before the Zoning Board issued its written decision and, thus, premature. However, his timely supplemental appeal cured any jurisdictional defect. *EDF*, 150 A.3d at 545. As to the merits of Objector's appeal, Landowner's request for a variance from the regulation of light color was in the nature of a dimensional variance, as held by the Zoning Board. We agree with the trial court that the Zoning Board's findings of fact are supported by substantial evidence and its legal conclusions conform to the applicable law. Accordingly, we affirm the trial court's order denying Objector's land use appeal.

_____
MARY HANNAH LEAVITT, President Judge Emerita

---

[18] Because we conclude that Landowner met its burden for a variance, we do not address Landowner's alternative argument that it has a vested right to continue the use of the new sign.

23

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Kelly,　　　　　　　　　　：
　　　　　Appellant　　　　　　　：
　　　　　　　　　　　　　　　　　：
　　　　v.　　　　　　　　　　　：　　No. 452 C.D. 2024
　　　　　　　　　　　　　　　　　：
Haverford Township Zoning　　　　：
Hearing Board and Union United　　：
Methodist Church　　　　　　　　：

## **O R D E R**

AND NOW, this 30th day of April, 2026, the order of the Court of Common Pleas of Delaware County, in the above-captioned matter, dated March 20, 2024, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita